**Cydnie Browning O'ROURKE**

v.

**James Patrick O'ROURKE.**

Court of Appeals of Tennessee, at Nashville.

March 25, 2009 Session.

June 5, 2009.

Application for Permission to Appeal Denied by Supreme Court Jan. 25, 2010.

Order on Denial of Rehearing July 7, 2009.

---

190

Connie Reguli, Brentwood, Tennessee, for the Appellant, Cydnie Browning O'Rourke.

Helen S. Rogers and Lawrence J. Kamm, Nashville, Tennessee, for the Appellee, James Patrick O'Rourke.

## OPINION

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., joined. HOLLY M. KIRBY, J., filed a separate dissenting opinion.

Respondent appeals the trial court's judgment finding her guilty on two counts of criminal contempt and imposing a sentence of twenty days in jail, with sixteen days suspended. We affirm.

This appeal arises from the November 2007 judgment of the Chancery Court for Williamson County finding Respondent/Appellant Cydnie B. O'Rourke (Ms. O'Rourke) guilty of two counts of criminal contempt for violating the terms of the modified permanent parenting plan entered by the trial court in July 2007. Ms. O'Rourke and Petitioner/Appellee James Patrick O'Rourke (Mr. O'Rourke) were divorced in April 2001 after 28 years of marriage. The parties have nine children, five of whom were minors at the time of the divorce. Pursuant to the parties' MDA and Parenting Plan, Ms. O'Rourke was named custodial parent of the youngest four minor children.

Following considerable post-divorce litigation which the trial court characterized as "long and tortuous," in July 2007 the trial court granted Mr. O'Rourke's petition to change custody and modify child support. By Memorandum Opinion entered on July 10, 2007, and Order entered on July 12, 2007, the trial court awarded sole custody and decision-making for the three remaining minor children to Mr. O'Rourke. In its July 2007 order, the trial court stated that Mr. O'Rourke's

sole decision making authority shall be with respect to every aspect of the minor children's well-being, and [his] Proposed Parenting Plan, as modified by the [c]ourt, and attached as Exhibit B shall be adopted and incorporated herein by reference in its entirety, and shall take effect immediately upon entry of this Order[.]

The amended parenting plan incorporated into the trial court's July 2007 order and attached to that order provided, in relevant part, that Mr. O'Rourke would make all major decisions and that each party would have the rights provided by Tennessee Code Annotated § 36–6–101. The statutory rights were modified, however, to provide that each parent would have "[t]he right to receive from the other parent, in the event the minor child or children leave the Nashville area overnight, an itinerary including telephone numbers, address, etc., for use in the event of an emergency[.]" The parenting plan provided that Ms. O'Rourke's parenting time would be from Thursday when school is dismissed to Monday when school resumes every other week.

In its July 2007, order, the trial court found Ms. O'Rourke to be in willful contempt for failing to follow the directives of the previous parenting plan. In its order, the trial court stated that it "elect[ed] not to impose any punishment" on Ms. O'Rourke at that time. The trial court further stated, however, that "Ms. O'Rourke should heed [the trial court's] warning" and that "[a]ny further findings of contempt [would] result in incarceration in the Williamson County Jail." The trial court additionally found that Ms. O'Rourke was "to blame" for the "astronomical" attorneys' fees in the matter. The court found that Ms. O'Rourke had "consistently done everything in her power to hinder, delay and obstruct the legal process in this case." It ordered Ms. O'Rourke to pay Mr. O'Rourke's attorney's fees in the amount of $330,799.86.

In September 2007, Mr. O'Rourke filed a petition for criminal contempt alleging that Ms. O'Rourke had removed the parties' two remaining minor children from the state over the weekend of September 22 and 23, 2007, without informing him and without providing him with an itinerary or with emergency contact information. Mr. O'Rourke additionally alleged that Ms. O'Rourke had failed to return the children to school on time on the morning of Monday, September 24, 2007. Mr. O'Rourke alleged that Ms. O'Rourke had willfully disobeyed the trial court's July 2007 order.

Mr. O'Rourke further asserted that Ms. O'Rourke was well aware that she was required to notify him and to provide an itinerary and contact information if she intended to take the children out of the Nashville area overnight. He asserted that on July 26, 2007, Ms. O'Rourke took the children to San Diego without providing him with an itinerary, that he objected at that time, and that Ms. O'Rourke provided the information after arriving in San Diego and in response to his threat of a contempt petition. Mr. O'Rourke prayed that Ms. O'Rourke be found in criminal contempt and punished by a fine and/or incarceration for a period of ten days for each offense for removing the children from the Nashville area without providing him with an itinerary or contact information; for failing to return the children to school on time on Monday, September 24, 2007; and for impeding telephone conversation between himself and the children during the week of July 27, 2007. Mr. O'Rourke further prayed that Ms. O'Rourke be enjoined and restrained from taking the children outside the Nashville area without specific advance written permission from him, and for costs and attorney's fees.

Ms. O'Rourke answered on October 25. In her answer, Ms. O'Rourke did not deny taking the children out of the Nashville area overnight without informing Mr. O'Rourke or providing him with an itinerary or contact information, or that the children were late for school on Monday, September 24. Rather, she asserted that modification to the statutory requirement of notice was "hidden from cursory examination of the parenting plan" and that it was "a hidden trap waiting to be sprung." Ms. O'Rourke denied that she had willfully denied the trial court's order because she was "unaware that she had to comply with anything other than the standard requirement." She further asserted that one child was no more than a few minutes late for school, and that the other had missed only the first period of school, physical education, and that she had sent a note to school explaining the circumstances. Ms. O'Rourke denied impeding telephone conversation between the children and Mr. O'Rourke. She prayed for attorney's fees for defending the petition and for costs to be taxed to Mr. O'Rourke.

Following a hearing on October 30, 2007, the trial court found that Mr. O'Rourke had proven, beyond a reasonable doubt, that Ms. O'Rourke was in criminal contempt for failing to provide a travel itinerary and contact information when she took the children to Colorado on September 22–23, 2007. The trial court also found, beyond a reasonable doubt, that Ms. O'Rourke had intentionally taken the children to school late on Monday, September 24, when she "planned for their airline flight to return at such a late hour that they would not reasonably get to bed until after 1:00 a.m. on a school night and that she purposely decided not to take them to school on time." The trial court found that Mr. O'Rourke did not prove, beyond a reasonable doubt, that Ms. O'Rourke had impeded telephone conversation between Mr. O'Rourke and the children. The trial court sentenced Ms. O'Rourke to ten days in the Williamson County jail for each of the two infractions, for a total of twenty days, suspending all but four days of the sentence, and set bond at $10,000 cash bond. The trial court denied Mr. O'Rourke's prayer for an injunction enjoining Ms. O'Rourke from removing the children from the Nashville area without his advance written permission. The trial court awarded Mr. O'Rourke attorney's fees in the amount of $7,370.50, and taxed costs to Ms. O'Rourke. The trial court entered its final order on November 16, 2007. Ms. O'Rourke filed a notice of ap-

peal to this Court immediately following the hearing in the trial court on October 30, 2007.

## Issues Presented

Ms. O'Rourke raises the following issues, as we slightly reword them, for our review:

(1) Whether the trial court erred by finding Ms. O'Rourke in criminal contempt where Mr. O'Rourke failed to meet his burden of proof beyond a reasonable doubt on each and every element.

(2) Whether the trial court erred in setting bond unreasonably without considering the lawful factors, thereby violating Ms. O'Rourke's constitutional right of reasonable bail.

(3) Whether the trial court erred by awarding Mr. O'Rourke his attorney's fees.

(4) Whether the trial court committed plain error.

## Analysis

■■■ Criminal contempt actions have long been used to protect the dignity and authority of the court. *E.g., Robinson v. Air Draulics Eng'g Co.,* 214 Tenn. 30, 377 S.W.2d 908, 912 (1964). Criminal contempt should be imposed in appropriate cases "when necessary to prevent actual, direct obstruction of, or interference with, the administration of justice." *Id.* A determination of contempt is within the sound discretion of the trial court, subject to the provisions of the law. *Id.* Generally, the trial court's decision will not be disturbed absent an abuse of discretion. *Id.* One charged with criminal contempt is presumed innocent until found guilty beyond a reasonable doubt. *Id.* On appeal following a finding of contempt, however, the defendant must overcome the presumption of guilt by demonstrating that the evidence preponderates against the trial court's findings. *Id.*

## I. Whether the trial court erred by holding Ms. O'Rourke in contempt

■■ In her brief to this Court, Ms. O'Rourke submits that the portion of the July 2007 parenting plan modifying the statutory rights provided by Tennessee Code Annotated § 36–6–101 to require her to provide notice, an itinerary, and contact information to Mr. O'Rourke if she removes the children from the Nashville area overnight is invalid because the changes were not supported by the findings of the trial court in its memorandum opinion. Ms. O'Rourke does not dispute that a trial court has the authority to modify these rights, however, and she does not assert that the language of the trial court's order is vague or ambiguous.

Ms. O'Rourke's argument, as we perceive it, is that the trial court erred by modifying the statutory rights based on the proposed parenting plan submitted by Mr. O'Rourke without making specific findings to support the modification. The trial court's July order incorporating the modified parenting plan was entered on July 12, 2007, however, and was not appealed. Accordingly, it become final and unappealable 30 days after entry. The time for appeal has long since passed, and Ms. O'Rourke may not now challenge the provisions of the parenting plan incorporated into the trial court's final order. This argument is without merit.

Ms. O'Rourke also contends that the trial court's order was not clear and unambiguous as required by *Konvalinka v. Chattanooga–Hamilton County Hospital,* 249 S.W.3d 346 (Tenn.2008). Although she does not assert that the language of the order is ambiguous, she contends that the

"real spirit" of the order is to make sure that the other parent has contact information "for use in the event of the emergency," and that Mr. O'Rourke was able to contact the children on their cell phones. She asserts, "[t]his Court can not [sic] find as a matter of law that the order under which the contempt action was brought was without ambiguity."

We must disagree with Ms. O'Rourke on this assertion for three reasons. First, the plain language of the order is clear and unambiguous, regardless of either parties' perception of its "spirit." Second, the order requires each parent to provide the specified information to the other. The trial court's order does not anticipate reliance on the children to serve as the purveys of travel itineraries or emergency contact information. Third, upon review of the entire record in this cause, it is clear to this Court that the trial court and the parenting plan sought to address a repeated lack of communication of travel and contact information.

Ms. O'Rourke further asserts that she did not violate the trial court's order where the decision to allow her children to go to school late was a "discretionary" one. In light of the school attendance record indicating that one child's absence from first period was "unexcused," we cannot agree with Ms. O'Rourke's characterization of this decision. Moreover, we must disagree with the dissent that Ms. O'Rourke's decision to bring the children to school late on Monday following the trip to Colorado falls within the ambit of discretionary parental decision-making in this case. The trial court's order clearly provides that Ms. O'Rourke's parenting time ends upon the resumption of school on Monday. At that time, Mr. O'Rourke's parenting time resumes. Under the circumstances of this case, Ms. O'Rourke's decision to return the children to school late was akin to a decision to return them late to Mr. O'Rourke's custody without notifying Mr. O'Rourke and without emergency circumstances. The trial court's order is clear; Ms. O'Rourke's violation of the order was intentional. Contrary to the dissent, we do not believe that Ms. O'Rourke's expectations regarding whether violating the court's order would result in a finding of contempt is determinative.

Ms. O'Rourke finally asserts that, assuming she did violate the trial court's order, any violation on her part was not willful. Her argument with respect to this assertion is that she believed that the standard parenting rights provided by the Tennessee Code would allow her to remove the children from the state for up to 48 hours without providing Mr. O'Rourke with an itinerary; that she believed one child arrived to school on time; and that the decision to allow the other child to arrive to school late was within her discretion. Regardless of the standard provisions of the Code, the trial court's July 2007 order was, as noted, unambiguous. Ms. O'Rourke's decision to abide by the standard rights contained in the Code in lieu of the trial court's order does not negate the willfulness of her violation of the court's order. Further, despite the dissent's conclusion that Ms. O'Rourke's violation of the trial court's order cannot be said to be willful because Ms. O'Rourke appeared not to have been aware of the modified provisions, the parties' July 2007 email communications regarding Ms. O'Rourke's travel to San Diego with the children belie Ms. O'Rourke's assertions of lack of knowledge. Even if lack of knowledge of an unambiguous and clear order might be considered to excuse non-compliance with that order, the communications contained in the record clearly demonstrate that Ms. O'Rourke was aware that the trial court's order required her to provide Mr. O'Rourke with a travel itinerary

and contact information if she took the children out of the Nashville area overnight. The order is unambiguous, and Ms. O'Rourke was aware of its provisions in September 2007. We affirm the trial court's finding of contempt.

*II. Whether the trial court erred by setting bond unreasonably in violation of Ms. O'Rourke's constitutional right to reasonable bail.*

■ Ms. O'Rourke next asserts that the trial court set bond arbitrarily and without a bond hearing, and that bond was set without consideration of the factors provided by Tennessee Code Annotated § 40–11–115. She asserts this error was plain error and reversible. Ms. O'Rourke does not assert that she was unable to post the bond required by the trial court, however, or that she was prejudiced or harmed by the trial court's decision. As Mr. O'Rourke asserts, Ms. O'Rourke's argument is that the trial court erred by setting bond despite her failure to object to the bond at any time in the trial court. The constitutionality of the bond was not raised at the October 2007 hearing or in any post-judgment motion, and it cannot be raised for the first time on appeal.

*III. The award of attorney's fees*

■ Ms. O'Rourke asserts that, under the statutes providing for contempt proceedings, the trial court erred by awarding Mr. O'Rourke his attorney's fees. She asserts that attorney's fees in this case are contemplated by neither statute nor agreement. The MDA contained in the record, however, which provides that both it and the parenting plan provisions for child custody and support are to be incorporated into the final decree of divorce, states that the prevailing party will be entitled to attorney's fees in an action to enforce any provision of the agreement. We affirm the award of attorney's fees in this case.

*IV. Whether the trial court committed plain error*

In her brief to this Court, Ms. O'Rourke asserts the trial court committed plain error by violating her constitutional rights. She also asserts that the trial court's bias against her is evidenced by the court's "inflammatory" remarks about Shawn Sanders, one of the parties' older children who, as Ms. O'Rourke asserts, was not an "issue" in this matter. Apart from making these assertions, Ms. O'Rourke presents no argument with respect to the trial court's alleged plain error. In light of our holding with respect to the trial court's finding of contempt, Ms. O'Rourke's assertion of plain error is without merit.

**Holding**

In light of the foregoing, the judgment of the trial court is affirmed. Mr. O'Rourke's requests for attorney's fees on appeal is denied. Costs of this appeal are taxed to the Appellant, Cydnie B. O'Rourke, and to her surety, for which execution may issue if necessary.

HOLLY M. KIRBY, J., filed a separate dissenting opinion.

HOLLY M. KIRBY, J., dissenting:

I must respectfully dissent in part from the majority opinion in this case. I dissent from the majority's affirmance of the trial court's finding of criminal contempt; in all other respects, I concur.

It is clear that, in the long and tortured course of the ongoing dispute between the parties, Mrs. O'Rourke consistently engaged in actions which drew the ire of the trial judge, forced him to issue orders with strict boundaries for her parenting responsibilities, and resulted in repeated warn-

ings to her to abide by the court's orders. However, I believe that the record does not support a finding that Mrs. O'Rourke's failure to notify Mr. O'Rourke of the trip and her decision to bring the children to school late amounted to criminal contempt.

On the notification issue, the majority rightly points out that the amended parenting plan clearly states that Mrs. O'Rourke was to provide Mr. O'Rourke with an itinerary and contact information if she took the children out of town "overnight." The amended order was more restrictive than the more usual 48–hour period that is provided in the applicable statute. Without question Mrs. O'Rourke was responsible for reading and understanding the terms of the amended order.

Mrs. O'Rourke maintained at trial that she was not aware that the amended order had shortened the period triggering her obligation to notify Mr. O'Rourke of the children's travel itinerary, and that she called her new attorney to ask if she was obliged to notify Mr. O'Rourke that she was taking the children to visit their grown sister, Shawn Sanders, in Colorado. Mrs. O'Rourke testified that her attorney at that time advised her that notification was not required unless the children would be out of town for 48 hours or more. The proof indicated that Mrs. O'Rourke purposefully shortened the trip to see Shawn Sanders so that the time period in which the children would be out of town would be less than 48 hours, in order to avoid having to notify Mr. O'Rourke of the trip. Apparently Mrs. O'Rourke's attorney generally corroborated her testimony.

The trial judge could have disbelieved Mrs. O'Rourke's testimony and found that she was aware of the notification requirement in the amended order and chose to disregard it. However, the trial judge's statements at the conclusion of the contempt hearing indicate that he accepted Mrs. O'Rourke's testimony but nevertheless found her to be in contempt. He stated:

... [I]t's undisputed Mrs. O'Rourke failed to provide any notice whatsoever that she was leaving Nashville overnight on September 22, and her reason for not doing so is because she didn't think that was what the agreement said—not the agreement—the order.

I find that that is not a justifiable excuse that would keep her out of willful contempt of court. Not reading the order is not an excuse.

More than that, I find it was intentional that she actually was trying to get by the spirit of the order because she thought it was 48 hours. So what she was trying to do was set up a trip, she'd go out of town and get back in time so she wouldn't have to comply with what she thought were the requirements. I find that was intentional.

Thus, the trial judge stated that it was "undisputed" that Mrs. O'Rourke did not think that notice was required for a trip of less than 48 hours, but he nevertheless found her conduct willful because (a) she was required to read and understand the order and (b) she was trying to "get by the spirit" of the order. The question then becomes, if Mrs. O'Rourke was in fact under the mistaken impression, from her attorney, that the order required her to notify Mr. O'Rourke only if the trip were more than 48 hours, is this the type of intent required to find that she willfully violated the court's order and was in criminal contempt of court?

Some older Tennessee cases indicate that constructive knowledge of the terms of the trial court's order may be sufficient to support a finding of criminal contempt. In *Garrett v. Forest Lawn Memorial Gardens, Inc.*, 588 S.W.2d 309, 315 (Tenn.Ct. App.1979), the Court stated: "In neither a

civil nor criminal contempt case is the defense of acting under the advice of counsel sufficient to prevent a finding that defendant is guilty of contempt. Rather, acting in good faith upon the advice of counsel is a mitigating factor considered in determining the appropriate punishment." (Citing *Robinson v. Air Draulics Engineering Co.*, 214 Tenn. 30, 377 S.W.2d 908 (1964)).

However, the applicability of these cases to the issue here is questionable because they appear to group together both civil and criminal contempt. *Id.* Moreover, since the date on which the above cases were decided, Tennessee caselaw on criminal contempt has evolved considerably. *See, e.g., Ahern v. Ahern*, 15 S.W.3d 73 (Tenn.2000); *State v. Wood*, 91 S.W.3d 769 (Tenn.Ct.App.2002); *Storey v. Storey*, 835 S.W.2d 593 (Tenn.Ct.App.1992).

While recent Tennessee cases have addressed other aspects of criminal contempt, they have not addressed the issue presented here. Clearly the alleged contemptuous act must be a willful or intentional act. *Ahern*, 15 S.W.3d at 78. The elements of criminal contempt must be proven beyond a reasonable doubt. *State v. Wood*, 91 S.W.3d at 773. "Willful" means that the violation of the court's order "was committed intentionally, with knowledge that the act was in violation of the court order, as distinguished from an accidental, inadvertent or negligent violation of an order." 17 C.J.S. *Contempt* § 14. *See, e.g., Hector v. United States*, 883 A.2d 129, 132 (D.C.Ct.App.2005) (finding of criminal contempt reversed because no proof that alleged contemnor was aware of all of the terms of the order, so evidence insufficient to find beyond a reasonable doubt that he willfully violated order).

Thus, an attempt to "get by the spirit" of a court order is not sufficient for a finding of criminal contempt. If the alleged contemnor in fact did not have knowledge of the terms of the order that was violated, I believe that this precludes a finding that her violation of the order was willful. In this case, the trial court's holding was premised on its conclusion that Mrs. O'Rourke believed, after consulting with her attorney at the time, that the order did not require her to notify Mr. O'Rourke of the trip. In light of this, I believe that the intent element has not been satisfied, and I would reverse the finding of criminal contempt on that basis.

The trial court also found that Mrs. O'Rourke was in criminal contempt for getting the children to school late on the Monday following the trip at issue. Because Mrs. O'Rourke and the children did not arrive home from the trip until quite late Sunday night, Mrs O'Rourke allowed the parties' son to sleep late and brought him to school an hour late on Monday morning, causing him to miss his 1st period P.E. class. The parties' daughter also arrived at school a few minutes late that same Monday morning. The trial court held Mrs. O'Rourke in criminal contempt for getting both children to school late. The majority affirms that finding as well.

The provision in the parenting plan that Mrs. O'Rourke allegedly violated states that Mrs. O'Rourke "shall have responsibility from Thursday when school is dismissed to Monday when school resumes." Mr. O'Rourke asserted that Mrs. O'Rourke violated this by choosing to bring their son to school late, and the trial court agreed. In his oral findings after the hearing, the trial court stated:

> I turn to the next count of not bringing them back to school. You know, there are going to be lots of occasions where some parent might be delayed bringing the child back to school, and that's just not—I'm not going to find those things

to be intentional or willful violations of the court order. Things happen.

But in this case, Mrs. O'Rourke made a calculated and intentional act to book this flight, knowing that she was going to come back after midnight on a school night. And on top of that, she was taking the children to visit the one person that I have severe misgivings about, Shawn Sanders, that I can tell in this case. Only bad things seem to happen.

And so she made an intentional decision to get those children back late. That intentional decision resulted in the failure to have Caroline at school on time, and then she made an intentional decision not to have Sammy there.

So it was more important for her to have her children go out for the weekend to Colorado to visit Shawn Sanders than to have them rested and ready for the school day. That's what I get out of it. I find that to be a willful violation of the Court's order.

I cannot agree that Mrs. O'Rourke's choice to let her son sleep late and bring him to school an hour late amounts to a willful violation of the trial court's order stating that Mrs. O'Rourke's parenting responsibilities end on "Monday when school resumes." There is no indication in the record that the trial court held Mrs. O'Rourke in criminal contempt because she had a history of tardiness in bringing the children to school. Rather, the trial court's stated reasons were (a) Mrs. O'Rourke's original decision to take the children on the trip, for which she had already been found in criminal contempt, and (b) the reason for the trip, i.e., to see the children's sister, Shawn Sanders. While the record indicates that the trial judge believed Ms. Sanders to be an adverse influence on the children, the parenting plan does not prohibit either parent from bringing the children to see Ms.

Sanders. In addition, the parenting plan gives each parent the right to make day-to-day decisions on the children's care during that parent's residential parenting time. The court should not find criminal contempt "unless the order violated is clear and explicit and the act complained of is clearly proscribed." 17 C.J.S. *Contempt* § 14. Here, I believe that it is unreasonable to expect Mrs. O'Rourke to know that bringing her son to school an hour late would constitute a willful violation of the parenting plan provision stating that her parenting responsibilities end on "Monday when school resumes." While the wisdom of Mrs. O'Rourke's decision to bring the children to school late can be debated, I cannot agree to affirm a holding that it rose to the level of criminal contempt of court.

For these reasons, I respectfully dissent from the majority's decision to affirm the trial court's finding that Mrs. O'Rourke was in contempt of court. In all other respects, I concur in the majority opinion.

## ORDER

The appellant, Cydnie Browning O'Rourke, has filed a petition for rehearing in this matter. After due consideration, the petition is denied and costs are taxed to the appellant, Cydnie Browning O'Rourke, and her surety, for which execution may issue if necessary.