GOSHORN, Judge.
International Jai-Alai Players Association (IJAPA) appeals an order of contempt fining the union $5,000 for violating the court’s April 28, 1988 restraining order. We reverse.
This appeal arises out of IJAPA’s 1988-89 strike of the Melbourne Jai-Alai Fron-ton. Among other things, the restraining order forbade striking IJAPA members, officers, agents, and all persons acting in its behalf or under its direction:
from unlawfully threatening, coercing, molesting, abusing, using profane language designed to unlawfully intimidate patrons, or committing any acts of violence at or towards either party, its property, officers, employees, applicants for employment, servants, customers, suppliers or their employees, including but not limited to:
A. The slashing of tires.
B. Breaking windshields of motor vehicles.
C. Throwing objects.
D. Painting personal property.
E. Spitting upon persons or their personal property.
Sports Palace, Inc., the owner of the Melbourne Jai-Alai Fronton, filed a motion for contempt, on October 11, 1988, alleging that striking IJAPA members were violating the injunction by screaming obscenities at and making threats to non-striking jai alai players, their families and friends, as well as patrons. More specifically, the motion asserted a striking player by the name of Barreutabetta shouted obscenities at a non-striking jai-alai player, David Solesky and punched the roof of Solesky’s car, damaging the vehicle. The motion further alleged that a non-striking player, Wilbur Allison, was harassed, intimidated, screamed at with profanity, and spit at.
At the hearing on the contempt motion, Danielle Ward, the girlfriend of Solesky, testified that on September 19, 1988, she picked up Solesky from the fronton. They proceeded out of the parking lot, stopping at a light. A striking player, identified by Ward as Marcos, got out of a car pulled parallel to hers, and came over to Solesky, screaming obscenities (which she specifically testified to) at Solesky. The light changed, and as Ward began to advance, Marcos slammed his fist into the roof of the car, denting it. Ward filed a report with the Melbourne Police Department.
Wilbur Allison testified that in mid-September of 1988 he went to the Golden Corral Steakhouse prior to the evening games. A striking player came up to him and informed Allison that scabs were not allowed to eat in the restaurant. The player pointed to a back table, where a number of other strikers were seated. After Allison finished his meal he walked out to his car and was followed by the strikers. Two players made obscene gestures. Allison recognized four striking players as Alvaro, *283 Alberto, Jorge and Guenaga. He could not identify the other two but recognized them from the picket line. The strikers called Allison a puta, a son of a bitch and Allison’s wife a whore. Alberto and Alvaro pushed Allison and spat on his feet. Allison later filed a report with the Melbourne Police Department. Milton J. Roth, the president of Sports Palace, identified Marcos as Goseba Barreutabetta, Alvaro as Alvaro Goitiandia, Alberbi as Jorge Alber-bi, Guenaga as Jose Guenaga, Jorge as Jorge Pagaegui, Valejo as Juan Valejo, and Osa as Pablo Osa. Each of the above were striking jai-alai players.
At the close of the hearing the trial judge made the finding that the injunction was breached by the shoving and unlawful touching of Allison and the striking of Ward’s car. The judge found that IJAPA had a duty to control its members. An order of contempt was entered holding that IJAPA violated the restraining order by ratifying the enjoined conduct and fining IJAPA $2,500 for each incident.
Generally speaking, a union is not liable for the unsanctioned acts of its members. Liability is dependent upon a showing that the union participated in, ratified, instigated, encouraged or condoned the illegal activity. International Union of Operating Engineers v. Long, 362 So.2d 987 (Fla. 3d DCA 1978), review denied, 372 So.2d 469 (Fla.1979), opinion corrected by 388 So.2d 572 (Fla. 3d DCA 1980); Annot., 36 A.L.R.3d 405 (1971).
No direct evidence was presented to prove that the union ratified, instigated, encouraged or condoned the strikers’ actions. Sports Palace contends that ratification can be inferred because both Ward and Allison filed police reports, the reports are public records, IJAPA is charged with knowledge of public records and their contents, and that due to this constructive knowledge IJAPA ratified the strikers’ illegal acts by failing to take affirmative action to dissuade its members from further enjoined conduct. We reject this argument, finding IJAPA’s constructive knowledge of a public record an insufficient basis to sustain a criminal contempt order.
REVERSED and REMANDED.
DANIEL, C.J., and HARRIS, J., concur.