IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 10, 2020 Session

## LOUISE ANN MAWN v. GREGG THOMAS TARQUINIO

**Appeal from the Circuit Court for Davidson County**
**No. 17D372   Phillip R. Robinson, Judge**

_____

**No. M2019-00933-COA-R3-CV**
_____

During the pendency of a divorce, Husband was convicted of six counts of criminal contempt for violating the statutory injunction under Tennessee Code Annotated section 36-4-106(d). On appeal, Husband contends that the trial court erred in finding that he willfully violated the statute. Because we are unable to determine if the trial court applied an impermissible conclusive presumption to find that Husband was aware of his obligations under the statutory injunction, we vacate and remand to the trial court for reconsideration.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY ARMSTRONG, JJ., joined.

Joshua G. Strickland and D. Scott Parsley, Nashville, Tennessee, for the appellant, Gregg Thomas Tarquinio.

Joshua V. Lindsey and April W. Nemer, Nashville, Tennessee, for the appellee, Louise Ann Mawn.

## OPINION

### I.   BACKGROUND

Plaintiff/Appellee Louise Ann Mawn ("Wife") filed a complaint for divorce from Defendant/Appellant Gregg Thomas Tarquinio ("Husband") on March 6, 2017. On March 13, 2017, Attorney Gregory D. Smith ("Initial Attorney") filed a notice of appearance on behalf of Husband. On the same day, the complaint, a summons, and a

copy of the temporary statutory injunction under Tennessee Code Annotated § 36-4-106(d) were served on Initial Attorney. On April 26, 2017, new counsel was substituted for Husband by agreed order. Wife thereafter filed an amended complaint. In addition to the grounds of irreconcilable differences and inappropriate marital conduct alleged in the first complaint, the amended complaint also alleged cruel and inhumane treatment by Husband. Wife filed a motion for an accounting, to allocate payment of expenses, and for support pendente lite on January 17, 2018. Then, on February 2, 2018, Husband filed a motion to require Wife to return certain funds that she had taken from the parties' joint accounts; the motion indicated that Wife's actions "likely violated the statutory restraining order issued when [Wife] decided to file for divorce[.]" On or about March 14, 2018, Husband's second counsel withdrew and his current counsel was substituted. On March 21, 2018, Husband filed an answer to Wife's amended complaint, as well as a counter-complaint for divorce.

On April 17, 2018, Wife filed a motion to enforce the statutory injunction and to compel the return of marital funds that Husband had allegedly withdrawn from the parties' bank accounts. On June 18, 2018, the trial court temporarily enjoined Husband from withdrawing any funds from the parties' four children's college savings plans that were in his name. In the meantime, Wife filed a second amended complaint on May 24, 2018, alleging adultery as an additional ground for divorce. Wife thereafter filed a motion seeking access to Husband's electronic devices for purposes of discovery; there was a concern that Husband was deleting messages from his paramour.

Wife's issues with regard to Husband's financial withdrawals and alleged spoliation of evidence came to a head when Wife filed two separate criminal contempt petitions against Husband in August and October 2018, both alleging that Husband had willfully violated the statutory injunction. Specifically, the August 2018 petition alleged the following counts of criminal contempt: (1) the willful deletion of all text messages between Husband and his paramour following the filing of the divorce complaint on March 6, 2017; (2) the willful deletion of all email messages between Husband and his paramour following the filing of the divorce complaint on March 6, 2017; (3) a $12,000.00 withdrawal on February 5, 2018, from one of the college savings plans set up for the parties' daughter; (4) a $6,700.00 withdrawal on March 6, 2018, from one of the college savings plans set up for the parties' other daughter. Wife asked that Husband be sentenced to ten days in jail and a $50.00 fine for each count. The October 2018 petition alleged two additional counts of criminal contempt: (1) a $6,600.00 withdrawal on April 5, 2018, from one of the college savings plans set up for the parties' son; and (2) a $6,600.00 withdrawal on April 5, 2018, from one of the college savings plans set up for the parties' other son. Thus, Wife's two petitions essentially alleged that Husband had willfully withdrawn funds from each of the parties four children's college savings plans without her knowledge or consent. Again, Wife asked for the maximum incarceration and fine for these alleged violations. On December 21, 2018, Husband filed his own petition for criminal contempt against Wife, alleging various violations of the parties' temporary

parenting plan.

Wife's contempt petitions were heard together on March 7, 2019. The evidence presented concerned Husband's spoliation of evidence and his action in cashing out the children's savings funds. At trial, Husband claimed that he was unaware of the statutory injunction. According to Husband, he was not served personally with the divorce complaint nor did he authorize Initial Attorneys to accept service on his behalf. Husband further testified that he had no discussions with any of his attorneys about the statutory injunction until preparation for the contempt hearing. Husband admitted, however, that he took money from the college savings accounts. According to Husband, this was a typical practice throughout the marriage and the money would be repaid once the marital home was sold. Husband also admitted to deleting messages from his paramour but again claimed that this was his typical practice. During her testimony, Wife admitted that she had taken out approximately $600,000.00 in loans while the divorce was pending and that on one occasion the parties had withdrawn from a college savings plan to pay a tax debt. During the trial, the trial court provided Husband with a copy of the statutory injunction and advised him to read it upon his journey home.

At the conclusion of the trial, the trial court orally found Husband guilty of all six counts of contempt—two from spoliation and four for depleting the college savings accounts. The trial court sentenced Husband to twenty-six days of incarceration. In its oral ruling, the trial court indicated that if the funds were repaid, it would consider suspending Husband's sentence. The trial court also indicated that it would consider an appeal bond. Husband's counsel indicated that he would be unable to repay the funds absent the sale of the marital home. Husband thereafter filed a motion to alter or amend the trial court's judgment. Husband alternatively asked that the sentence be stayed pending appeal. Wife responded in opposition to the motion. On April 18, 2019, the trial court entered a written order allow Husband to post a bond pending appeal; Husband thereafter posted the required bond. The trial court entered its written order finding Husband guilty of contempt on April 30, 2019. Husband's notice of appeal was filed on May 28, 2019. Husband thereafter filed a notice that he was striking his motion to alter or amend.

## II.    ISSUES PRESENTED

Husband raises three issues in this appeal, which we reorder and slightly restate:

1. Whether the trial court's order complied with Rule 52.01 of the Tennessee Rules of Civil Procedure.
2. Whether the trial court erred by finding Husband guilty of criminal contempt beyond a reasonable doubt for willfully violating the statutory injunction.
3. Whether the sentence imposed is excessive.

### III. STANDARD OF REVIEW

This case was resolved by bench trial. After a bench trial, a trial court's findings of fact are reviewed "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). A trial court's conclusions of law are entitled to no presumption of correctness. **Blackburn v. Blackburn**, 270 S.W.3d 42, 47 (Tenn. 2008) (citing **Langschmidt v. Langschmidt**, 81 S.W.3d 741, 744–45 (Tenn. 2002)). On appeal, great weight is given to "the trial court's factual findings that are determined on credibility." **Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.**, 194 S.W.3d 415, 424 (Tenn. Ct. App. 2005) (citing **In re Estate of Walton**, 950 S.W.2d 956, 959 (Tenn. 1997)).

### IV. DISCUSSION

#### A.

As an initial matter, we address Husband's argument that the trial court's order does not comply with Rule 52.01. Rule 52.01 of the Tennessee Rules of Civil Procedure requires that trial courts make findings of fact and conclusions of law to support their rulings following bench trials. Tenn. R. Civ. P. 52.01 ("In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions or law and direct the entry of the appropriate judgment."). Rule 52.01 "is 'not a mere technicality.'" **Babcock v. Babcock**, No. E2014-01670-COA-R3-CV, No. E2014-01672-COA-R3-CV, 2015 WL 1059003, at \*6 (Tenn. Ct. App. Mar. 9, 2015) (quoting **In re K.H.**, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at \*8 (Tenn. Ct. App. May 15, 2009)). No bright-line test exists to determine whether factual findings are sufficient, but the findings of fact must include as many facts as necessary to express how the trial court reached its ultimate conclusion on each factual issue. **Lovlace v. Copley**, 418 S.W.3d 1, 35 (Tenn. 2013) (citing 9C Charles A. Wright et al., *Federal Practice and Procedure* § 2571, at 328 (3d ed. 2005)).

After a thorough review of the trial court's order, we conclude that it is sufficient. The trial court's order spans over six pages. Therein, the trial court discusses the issuance of the statutory injunction, the fact that the injunction was served on Husband's initial attorneys, and that these attorneys accepted service on Husband's behalf. The trial court next dispensed with Husband's contention that he had no notice of the injunction, specifically finding that Husband had notice of the injunction and that it was valid, enforceable, and unambiguous. The trial court next considered each of the six counts of contempt, finding the proof presented of each violation of the statutory injunction beyond a reasonable doubt. Although the trial court certainly could have included additional facts concerning each violation, it appears from the record and Husband's brief that he generally does not dispute that he took the actions that Wife asserts were contemptuous, but only whether he did so with the proper mens rea. As such, we must conclude that the

trial court's order is sufficient to facilitate appropriate appellate review.

## B.

Husband next contends that the trial court erred in finding that he was guilty of criminal contempt beyond a reasonable doubt. Tennessee Code Annotated section 29-9-102 authorizes courts to "inflict punishments for contempts of court" for, inter alia, "[t]he willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts[.]" Tenn. Code Ann. § 29-9-102(3). In this situation, "[t]here are three essential elements to criminal contempt: '(1) a court order, (2) the defendant's violation of that order, and (3) proof that the defendant willfully violated that order.'" *Pruitt v. Pruitt*, 293 S.W.3d 537, 545 (Tenn. Ct. App. 2008) (citing *Foster v. Foster*, No. M2006-01277-COA-R3-CV, 2007 WL 4530813, at *5 (Tenn. Ct. App. Dec. 20, 2007)). In addition, the plaintiff must show the following four elements: (1) the order allegedly violated was lawful; (2) the order was clear and unambiguous; (3) the individual charged did in fact violate the order; and (4) the individual acted willfully in so violating the order. *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 354–55 (Tenn. 2008); *Furlong v. Furlong*, 370 S.W.3d 329, 336 (Tenn. Ct. App. 2011) (stating that the four-element analysis outlined in *Konvalinka* applies to criminal and civil contempt actions). As this Court has previously explained,

> A person charged with criminal contempt is "presumed innocent and may not be found to be in criminal contempt in the absence of proof beyond a reasonable doubt that they have willfully failed to comply with the court's order." *Long v. McAllister-Long*, 221 S.W.3d 1, 13 (Tenn. Ct. App. 2006) (citing *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996); *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993)). If the defendant is found guilty by the trial court, the defendant has the burden on appeal of illustrating why the evidence is insufficient to support the verdict of guilt. *Black*, 938 S.W.2d at 399. When the sufficiency of the evidence in a criminal contempt case is raised in an appeal, this court must review the record to determine if the evidence in the record supports the finding of fact of guilt beyond a reasonable doubt, and "if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt" we are to set aside the finding of guilt. *See* Tenn. R. App. P. 13(e) (directing that "findings of guilt in criminal actions shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt").

*Pruitt*, 293 S.W.3d at 545–46.

The court order at issue in this case is the statutory injunction issued in all

Tennessee divorces pursuant to Tennessee Code Annotated § 36-4-106(d). This injunction prevents parties to a divorce from, *inter alia*, "transferring, assigning, borrowing against, concealing or in any way dissipating or disposing, without the consent of the other party or an order of the court, of any marital property." Tenn. Code Ann. § 36-4-106(d). The injunction further prohibits "both parties from hiding, destroying or spoiling, in whole or in part, any evidence electronically stored or on computer hard drives or other memory storage devices." The statutory injunction goes into effect either "upon personal service of the complaint and summons on the respondent or upon waiver and acceptance of service by the respondent[.]"

Husband essentially admitted at trial that he had both deleted messages between himself and his paramour and removed money from the parties' college savings funds following the filing of the divorce decree and the issuance of the statutory injunction. As such, the first two elements of criminal contempt are met in this case. *See Pruitt*, 293 S.W.3d at 545. In addition, although Husband argued in the trial court that the statutory injunction was not a lawful unambiguous order, he appears to have abandoned that argument on appeal.[1] *See Konvalinka*, 249 S.W.3d at 354–55. The sole issue related to Husband's guilt therefore concerns whether Husband's violation of the statutory injunction was willful.

Tennessee's seminal case on contempt is ***Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.***, 249 S.W.3d 346 (Tenn. 2008). Therein, the Tennessee Supreme Court explained that the willfulness element is not identical in the context of a civil and criminal contempt:

> The word "willfully" has been characterized as a word of many meanings whose construction depends on the context in which it appears. ***Spies v. United States***, 317 U.S. 492, 497, 63 S.Ct. 364, 87 L.Ed. 418 (1943); ***United States v. Phillips***, 19 F.3d 1565, 1576–77 (11th Cir.1994). Most obviously, it differentiates between deliberate and unintended conduct. ***State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust***, 209 S.W.3d at 612. However, in criminal law, "willfully" connotes a culpable state of mind. In the criminal context, a willful act is one undertaken for a bad purpose. ***Bryan v. United States***, 524 U.S. 184, 191, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998); ***State v. Braden***, 867 S.W.2d 750, 761 (Tenn. Crim. App. 1993) (upholding an instruction stating that "[a]n act is done willfully if done voluntarily and intentionally and with the specific intent to

---

[1] When questioned, Husband again raised this argument at oral argument. Because this issue was not raised and properly supported in Husband's appellate brief, it is waived. *See **Skaan v. Fed. Exp. Corp.***, No. W2011-01807-COA-R3-CV, 2012 WL 6212891, at *7 (Tenn. Ct. App. Dec. 13, 2012) (citing ***Newcomb v. Kohler Co.,*** 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006)) (holding that an argument raised at oral argument but not properly briefed was waived on appeal).

do something the law forbids").

In the context of a civil contempt proceeding under Tenn. Code Ann. § 29-2-102(3), acting willfully does not require the same standard of culpability that is required in the criminal context. *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust*, 209 S.W.3d at 612. Rather, willful conduct

> consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is 'willful' if it is the product of free will rather than coercion. Thus, a person acts 'willfully' if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing.

*State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust*, 209 S.W.3d at 612 (citations omitted). Thus, acting contrary to a known duty may constitute willfulness for the purpose of a civil contempt proceeding. *United States v. Ray*, 683 F.2d 1116, 1127 (7th Cir.1982); *City of Dubuque v. Iowa Dist. Ct. for Dubuque County*, 725 N.W.2d 449, 452 (Iowa 2006); *Utah Farm Prod. Credit Ass'n v. Labrum*, 762 P.2d 1070, 1074 (Utah 1988).

*Konvalinka*, 249 S.W.3d at 357 (footnote omitted).

Based on the language of *Konvalinka*, Husband contends that the evidence is insufficient to prove his guilt beyond a reasonable doubt because Wife did not show that he acted willfully, as he alleges that he did not have actual knowledge that his actions were unlawful. As we perceive it, Wife's contentions are two-fold. First, Wife asserts that the willfulness standard should not be interpreted to require knowledge of unlawfulness. In the alternative, however, Wife asserts that Husband's knowledge in this case was shown through the service of the injunction on Initial Attorney.

In support of her first argument, Wife contends that this Court should apply the definition of willfulness utilized by the Tennessee Supreme Court in *State v. Casper*, 297 S.W.3d 676 (Tenn. 2009). In *Casper*, the defendant was charged with nineteen counts of sale of securities by an unregistered broker-dealer or agent in violation of the Tennessee Securities Act. *Id.* at 678. In particular, the statute required the state to prove that the defendant acted willfully. At trial, the defendant claimed that he was unaware of the registration requirement in this situation and therefore that he did not act willfully. *Id.* at 679. The jury convicted the defendant on fifteen counts, but the Court of Criminal Appeals reversed, holding that the prosecution was required to prove not only that the defendant intentionally sold the securities, but also that the defendant was "'aware that his or her conduct [wa]s prohibited by [the statute], and yet nevertheless intentionally [sold] the security knowing he or she [wa]s violating the law.'" *Id.* at 682 (quoting *State*

***v. Casper,*** No. M2006-02538-CCA-R3-CD, 2008 WL 2648954, at *10 (Tenn. Crim. App. July 3, 2008)).

The Tennessee Supreme Court reversed the decision of the Court of Criminal Appeals and reinstated the jury verdict. ***Id.*** at 677. In reaching this result, the Tennessee Supreme Court first noted that the term willfully "does not have a plain meaning" and has been defined differently depending on its context. ***Id.*** at 688. Rather, "'[t]he word 'willfully' has been characterized as a word of many meanings whose construction depends on the context in which it appears.'" ***Id.*** (quoting ***Spies v. United States,*** 317 U.S. 492, 497, 63 S.Ct. 364, 87 L.Ed. 418 (1943)). The court noted some contexts where willfully was defined as requiring as little as action that is simply the product of free will, see ***In re M.L.P.,*** 281 S.W.3d 387, 392 (Tenn. 2009), to requiring as much as purposeful violations of orders that include an "element of perverseness." ***Rogers v. Kroger Co.,*** 832 S.W.2d 538, 541 (Tenn. 1992). Moreover, although the Court noted that in the criminal context, willful also connotes an action taken for a bad purpose, this definition likewise "defies clear understanding and depends heavily upon context." ***Casper***, 297 S.W.3d at 688. As such, even in the criminal context, the Court noted that the term willfully has been defined broadly as "an act done with a bad purpose; without justifiable excuse; stubbornly, obstinately, perversely. The word is also employed to characterize a thing done without ground for believing it is lawful, or conduct marked by careless disregard whether or not one has the right so to act." ***Id.*** (citing ***Bryan,*** 524 U.S. at 191 n.12 (quoting ***United States v. Murdock,*** 290 U.S. 389, 394–95, 54 S.Ct. 223, 78 L.Ed. 381 (1933) (citations omitted))).

Accordingly, the Tennessee Supreme Court ruled that the Court of Criminal Appeals' use of caselaw outside the securities context was not persuasive of the proper interpretation of the Tennessee Securities Act. ***Id.*** (citing ***Ratzlaf v. United States***, 510 U.S. 135, 114 S. Ct. 655, 126 L. Ed. 2d 615 (1994) (requiring knowledge that action was unlawful with regard to a financial crime); ***Cheek v. United States***, 498 U.S. 192, 111 S. Ct. 604, 112 L. Ed. 2d 617 (1991) (holding that the jury should be permitted to consider a defendant's belief that a law was not applicable in determining whether the defendant acted willfully)). Instead, the court held that the proper focus was caselaw interpreting statutes from other jurisdictions that likewise derive from the 1956 Uniform Securities Act. According to the Tennessee Supreme Court "[t]he clear majority of state courts, when considering criminal prosecutions for either the sale of unregistered securities or the sale of securities by an unregistered individual, have held that the state need not prove that the accused knew his acts were illegal in order to behave willfully." ***Id.*** at 692 (citing cases). In adopting the majority approach, our high court relied on two important considerations. First, the plain language of the relevant statute indicated that "imprisonment" was not an available punishment "if the person proves that the person had no actual knowledge of the rule or order." ***Id.*** at 693 (citing Tenn. Code Ann. § 48-2-123(a)). "By stating that the level of punishment for violations of the rules and regulations promulgated under the 1980 Securities Act is subject to a heightened

knowledge requirement, the legislature sent a clear signal that such a requirement does not exist for violations of the Act itself." *Id.* Second, the majority rule was consistent with the remedial purpose of the statute to protect the public from fraud, which statute is to be liberally construed to effectuate its purpose. *Id.* (citing *King v. Pope,* 91 S.W.3d 314, 323–24 (Tenn. 2002)). Thus, the Tennessee Supreme Court held that knowledge that the defendant's action was unlawful was not required to show that the defendant acted willfully under the relevant statute.

Wife asks this Court to likewise hold that knowledge of unlawfulness is not required to prove willfulness in the criminal contempt context. As noted by the *Casper* court, however, the definition of willfulness is highly dependent on the context. *See Casper*, 297 S.W.3d at 689 (explaining that "context is essential to determining the statutory meaning of the words 'willful' or 'willfully'"). Cases involving criminal contempt are therefore better sources from which to define this term. And these cases have generally concluded that willfulness in the criminal contempt realm suggests an element of knowledge. For example, the Tennessee Court of Criminal Appeals offered this explanation of the willfulness required to sustain a finding of criminal contempt based on the holding in *Konvalinka*:

> We read the supreme court's articulation of the varying standards for willfulness in *Konvalinka*, and its express limitation of the "intentional or voluntary" standard to civil contempt proceedings, to indicate that something more is required for willfulness in the context of a criminal contempt proceeding. Although the court did not specifically state that the standard for willfulness in a criminal contempt proceeding is "a culpable state of mind" equivalent to "a bad purpose," it used those standards to distinguish between willfulness "[i]n the criminal context" and the standard it adopted for civil contempt. *Id.* We therefore conclude that in order for a party's disobedience of a court order to be "willful" and subject to criminal contempt under section 29-9-102(3), the act must be "done voluntarily and intentionally and with the specific intent to do something the law forbids." *See id.* (quoting *State v. Braden*, 867 S.W.2d 750, 761 (Tenn. Crim. App. 1993)). In other words, the contemnor's act must be "undertaken for a bad purpose." *Id.* (quoting *Bryan*, 524 U .S. at 191); *see also* [*In re*] *T.C.H.*, No. M2009-01230-COA-R3-JV, 2010 WL 1254349, at *6 [Tenn. Ct. App. March 31, 2010)] ("'Willful' means that the violation of the court's order was committed intentionally, with knowledge that the act was in violation of the court[']s order, as distinguished from an accidental, inadvertent or negligent violation of an order. In other words, it must be shown that the defendant intentionally and deliberately disobeyed the court order.") (quotation marks, citations, and brackets omitted).

*State v. Smith*, No. E2009-00202-CCA-R3-CD, 2010 WL 5276902, at *6 (Tenn. Crim.

- 9 -

App. Dec. 17, 2010), *perm. app. denied* (Tenn. May 27, 2011). Although **Smith** is not a published case, permission to appeal was denied by the Tennessee Supreme Court. As such, we find its reasoning highly persuasive. *See* Tenn. Sup. Ct. R. 4(g)(1) (providing that unpublished opinions are merely persuasive authority in unrelated cases); *cf.* **Williams v. City Of Milan**, No. W2010-00450-COA-R9-CV, 2011 WL 538868, at *5 (Tenn. Ct. App. Feb. 16, 2011) (noting that an unpublished case, while not controlling authority, was "highly persuasive" under the circumstances). Moreover, decisions from this Court have followed similar reasoning to conclude that a more culpable state of mind is required to prove criminal contempt rather than civil contempt. As this Court has put it,

> [I]n the context of criminal contempt, willfulness has two elements: (1) intentional conduct; and (2) a culpable state of mind. *See* **State v. Beeler,** 387 S.W.3d 511, 523 (Tenn. 2012); **Konvalinka,** 249 S.W.3d at 357. Willful disobedience of any court order "entails an *intentional* violation of a known duty. . . ." **Beeler,** 387 S.W.3d at 523 (emphasis in original) (citing **In re Sneed,** 302 S.W.3d 825, 826 n. 1 (Tenn. 2010)). The statutory definition of intentional conduct is found in Tennessee Code Annotated section 39-11-302(a) (2010): "'Intentional' refers to a person who acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." Tenn. Code Ann. § 39-11-302(a). To satisfy the culpable state of mind requirement, the act must be "undertaken for a bad purpose." **Konvalinka,** 249 S.W.3d at 357. In other words, willful disobedience in the criminal contempt context is conduct "done voluntarily and intentionally and with the specific intent to do something the law forbids." *Id.* (quoting **State v. Braden,** 867 S.W.2d 750, 761 (Tenn. Crim. App. 1993) (upholding this definition of willful misconduct for criminal contempt)).

**Duke v. Duke**, No. M2013-00624-COA-R3-CV, 2014 WL 4966902, at *31 (Tenn. Ct. App. Oct. 3, 2014); *see also* **Levoy v. Levoy**, No. M2018-01276-COA-R3-CV, 2019 WL 6331247, at *3 (Tenn. Ct. App. Nov. 26, 2019) (requiring both intentional conduct and a culpable state of mind to prove criminal contempt); **Renken v. Renken**, No. M2017-00861-COA-R3-CV, 2019 WL 719179, at *6 (Tenn. Ct. App. Feb. 20, 2019) (same); **Howell v. Smithwick**, No. E2016-00628-COA-R3-CV, 2017 WL 438620, at *4 (Tenn. Ct. App. Feb. 1, 2017) (same); **In re Carolina M.**, No. M2014-02133-COA-R3-JV, 2016 WL 6427853, at *5 (Tenn. Ct. App. Oct. 28, 2016), *perm. app. denied* (Tenn. Feb. 15, 2017) (same). Indeed, in its most recent pronouncement on this issue, the Tennessee Supreme Court has indicated that criminal contempt requires "an *intentional* violation of a **known** duty." **State v. Beeler**, 387 S.W.3d 511, 523 (Tenn. 2012) (second emphasis added) (citing **In re Sneed**, 302 S.W.3d 825, 827 (Tenn. 2010) (noting that willful is equivalent to intentional under Tenn. Code Ann. § 39-11-302(a) ("'Intentional' refers to a person who acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or

cause the result.”))). *But see* **Mobley v. Mobley**, No. E2012-00390-COA-R3-CV, 2013 WL 1804189, at *18 (Tenn. Ct. App. Apr. 30, 2013) (stating that willful in the criminal context can mean “undertaken with a bad purpose,” but it can also mean “‘a thing done without ground for believing it is lawful; or conduct marked by careless disregard whether or not one has the right so to act. . . .’” (quoting **Casper**, 297 S.W.3d 687–88)).

Additionally, many cases upholding criminal contempt convictions mention that the contemnor had knowledge of the order that was being violated. *See, e.g.,* **Levoy**, 2019 WL 6331247, at *3 (“The evidence at trial supports a finding that Father’s violations of the plan were willful. He was aware of the provisions of the parenting plan.”); **Renken**, 2019 WL 719179, at *6 (“Father knew that he was required to provide Mother with a working phone number to contact the children.”); *cf.* **Mobley**, 2013 WL 1804189, at *18 (noting mother’s argument in the contempt trial was that she had complied with the trial court’s order to the best of her ability and understanding, not that she did not have notice of the order allegedly violated). The parties do not cite a single case wherein a criminal contempt conviction was sustained in the absence of proof that the contemnor had some knowledge of the allegedly violated order or writ.

Moreover, this court has previously defined the term willful in other contexts as containing an element of knowledge; for example, in the context of termination of parental rights, the willful failure to support requires proof that the parent be “aware of his or her duty to support[.]” **In re M.J.B.**, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004).[2] As such, we continue to believe that in order to successfully prosecute a claim for willful violation of a lawful order or writ, the prosecuting party must show that the contemnor acted both intentionally and with a bad purpose, i.e., that the contemnor acted with knowledge that his actions were unlawful. Indeed, several sources outside our jurisdiction likewise require knowledge as a prerequisite to willfulness in this context. *See*, *e.g.,* **Bryan v. United States**, 524 U.S. 184, 191–92 (1998) (quoting **Ratzlaf v. United States**, 510 U.S. 135, 137 (1994)) (explaining that the bad purpose element of the willfulness inquiry requires proof “that the defendant acted with knowledge that his conduct was unlawful”); **United States v. Phillips**, 527 F. Supp. 1361, 1364 (N.D. Ill. 1981) (“In order to mount a successful prosecution for criminal contempt, the government must prove that the defendant had actual knowledge of a specific court order and that he or she wilfully

---

[2] The statute that the **In re M.J.B.** court was interpreting has been amended in recent years to remove the “willful” means rea from this ground for termination. *See* 2018 Tenn. Laws Pub. Ch. 875 (H.B. 1856), eff. July 1, 2018 (“Tennessee Code Annotated, Section 36-1-102(1), is amended by deleting the words “willful” and “willfully” wherever they appear[.]”); *see also* Tenn. Code Ann. § 36-1-102(a)(1)(A) (2019) (defining abandonment as failure to support in the relevant time period). The change in the statute does not alter this Court’s holding that in order to show willfulness in the context of a failure to support, the parent must be aware of his or her duty to support. As discussed *infra*, however, this knowledge may be established via a statutory presumption. *See generally* Tenn. Code Ann. § 36-1-106(1)(H) (presuming that parents know of their duty to support their children).

disobeyed its terms."); *Freeman v. Superior Court*, 44 Cal.2d 533, 537, 282 P.2d 857 (Cal. 1955). ("[T]he alleged contemner's notice or knowledge of the order that he is charged with violating is a jurisdictional prerequisite to the validity of a contempt order."); *Thomas v. Thomas*, 569 P.2d 1119, 1121 (Utah 1977) ("Accordingly, in order to justify a finding of contempt and the imposition of a jail sentence, it must appear by clear and convincing proof that: (1), the party knew what was required of him; (2), that he had the ability to comply; and (3), that he wilfully and knowingly failed and refused to do so."); 17 C.J.S. *Contempt* § 14 ("Under some authority, contempt is a proper sanction only for willful misconduct or willful disobedience, requiring evidence of conduct that is intentional and deliberate with a bad or evil purpose. . . . A contemnor acts with wrongful intent if he or she knows or should reasonably be aware that his or her conduct is wrongful, and mere inadvertence or honest mistake will not constitute contempt.") (footnotes omitted).

Still, the "bad purpose" standard "does not foreclose the possibility of a well-intentioned or caring motive." *Duke*, 2014 WL 4966902, at *32 (citing *Thigpen v. Thigpen,* 874 S.W.2d 51, 54 (Tenn. Ct. App. 1993) (finding criminal contempt even though mother was "following her maternal desire to help her son avoid a disturbing situation.")). Rather, "[t]he 'bad purpose' requirement addresses the actor's mens rea— their intent to act as the law forbids." *Id.* Thus, we have held that a parent committed criminal contempt by sending disparaging emails to his co-parent, even though the parent acted out of subjective concern for his children's welfare, when the evidence showed that the parent "was also aware that his acts would violate the trial court's directives." *Id.* (noting, as to another count of criminal contempt, that the parent "does not claim that he was unaware of his obligation to refrain from making derogatory remarks about Mother in the children's presence"). We have come to an opposite conclusion, however, where a child's guardian ad litem sent an email containing protected, confidential information in technical violation of a state statute. *In re Carolina M.*, 2016 WL 6427853, at *5–6. In that situation, we held that the evidence did not establish that the guardian ad litem acted with "ill intent." *Id.* at *6.

Husband contends that his actions in this case were not willful as that term is defined in the criminal contempt context because he likewise did not act with ill intent or a bad purpose. In fact, Husband argues that he acted innocently because he was unaware of the issuance and contents of the statutory injunction. In the absence of knowledge that his conduct was unlawful, Husband asserts that he cannot be found to have acted in willful disobedience to the injunction. The trial court rejected Husband's argument at trial, finding that Husband was notified of the statutory injunction through service on his counsel. In particular, the trial court's written order provides as follows:

> The Court finds that [Husband] engaged the services of [Initial Attorney] on or before March 13, 2017. The Court bases this finding on evidence in this cause, being the Notice of Appearance filed by [Initial

Attorney], which was made an exhibit in this matter. The Court finds that [Initial Attorney] entered a Notice of Appearance on March 13, 2017. The Court further finds that counsel for Husband accepted service on his behalf on March 13, 2017, which the Court finds contained the Complaint for Divorce, the statutory injunctions pursuant to [§] T.C.A. 36-4-106(d), and a Summons.

The Court further finds that despite [Husband] claiming to have no knowledge of the statutory injunctions, [Husband] is charged with actual knowledge, having engaged counsel and authorized counsel to accept service on his behalf. The Court finds that the statutory injunctions in this cause were served as required under T.C.A. [§] 36-4-106(d) and are valid, enforceable and unambiguous Orders of this Court.

Thus, while the trial court's order speaks of "actual knowledge," it is clear that the trial court found that Husband's knowledge came not from his own personal knowledge of the contents of the order, but from knowledge to his attorneys that was imputed to Husband. At oral argument, Wife confirmed that other than this imputed knowledge, there was no proof of actual knowledge at trial.

Wife contends, however, that the knowledge imputed to Husband through service on Husband's attorneys is sufficient to sustain Husband's conviction for criminal contempt. In support, she notes the plain language of section 36-4-106(d) provides that the injunction is effective upon not only personal service on the respondent spouse, but also "upon waiver and acceptance of service by the respondent[.]" Here, although Husband testified that he never expressly authorized Initial Attorney to accept service on his behalf, there is no dispute that the complaint, summons, and statutory injunction were served on Initial Attorney, and Husband never lodged any objection to personal jurisdiction over him due to lack of service. *Cf.* **Landers v. Jones**, 872 S.W.2d 674, 676 (Tenn. 1994) ("Waiver occurs . . . if there is no objection to personal jurisdiction in the first filing, either a Rule 12 motion or an answer."). Moreover, Tennessee law is well-settled "that knowledge obtained by an attorney during the course and in the scope of his or her representation of a particular client is conclusively imputed to the client as a matter of law." **Boote v. Shivers**, 198 S.W.3d 732, 742 (Tenn. Ct. App. 2005) (citing **Bellar v. Baptist Hosp., Inc.**, 559 S.W.2d 788, 789 (Tenn. 1978)). As we have previously explained:

[A] "person generally is held to know what his attorney knows and should communicate to him, and the fact that the attorney has not actually communicated his knowledge to the client is immaterial." **Smith v. Petkoff**, 919 S.W.2d 595, 597–98 (Tenn. Ct. App. 1995); *accord* **Lane-Detman, L.L.C. v. Miller & Martin**, 82 S.W.3d 284, 296 (Tenn. Ct. App. 2002). Once it has been established that the attorney obtained the relevant knowledge during the course of representing the client, "the constructive

- 13 -

notice thereof to the client is conclusive, and cannot be rebutted by showing that the attorney did not in fact impart the information so acquired." ***Smith v. Petkoff***, 919 S.W.2d at 597–98; *accord **Winstead v. First Tenn. Bank N.A., Memphis***, 709 S.W.2d at 632.

***Boote***, 198 S.W.3d at 742.

Still, we are not convinced that simply because the statutory injunction becomes effective upon "waiver and acceptance of service" that a defendant may be found in criminal contempt for failure to comply when there is no proof that the defendant had knowledge of the injunction's prohibitions. Importantly, while the injunction served on Husband's counsel states that "[v]iolation of this statute may result in a finding of contempt of court[,]" nothing in section 36-4-106(d) states that a criminal contempt petition against a defendant spouse can be prosecuted on "acceptance of service" by a defendant's counsel alone. As such, we cannot conclude that this issue may be resolved solely by reference to section 36-4-106(d).[3]

Whether knowledge imputed by operation of law is sufficient to sustain a finding of willfulness in the criminal contempt context has not been the subject of considerable analysis by Tennessee courts. Our research has revealed one case that somewhat considers this issue, ***O'Rourke v. O'Rourke***, 337 S.W.3d 189 (Tenn. Ct. App. 2009). In ***O'Rourke***, following years of torturous litigation, the trial court entered a modified parenting plan naming father primary residential parent and giving him sole authority over major decisions. In contrast to the statutory rights provided by Tennessee Code Annotated section 36-6-101(a)(3)(B), the modified plan also provided each parent with the right to an itinerary and emergency contact information in the event the children left the Nashville area overnight. ***Id.*** as 191. Soon, however, father filed a petition for criminal contempt against mother for violations of the modified parenting plan. ***Id.*** In particular, father alleged that the mother had removed the children overnight without providing an itinerary or emergency contacts and failed to return the children to school on time. Father further asserted that mother was aware of the modified parenting plan's requirements because this issue had arisen previously, and he had previously objected. ***Id.*** at 191–92.

Mother answered father's petition but did not deny that she had taken the actions alleged by father. Rather, mother asserted that the "modification to the statutory requirement of notice was 'hidden from cursory examination of the parenting plan' and that it was 'a hidden trap waiting to be sprung.'" ***Id.*** at 192. Thus, mother argued that she had not willfully disobeyed the modified parenting plan because she was not aware of its

---

[3] That is not to say that a spouse may not seek other recourse against a spouse for violation of the statutory injunction. This opinion analyzes only the situation wherein a spouse seeks to hold his or her former partner in criminal contempt for a violation of the statutory injunction.

- 14 -

specific requirements. Following a hearing, the trial court nevertheless found mother guilty of two counts of criminal contempt and sentenced her to a short incarceration. *Id.*

The Court of Appeals affirmed the decision in a split opinion. The majority concluded that despite mother's argument otherwise, the modified parenting plan was clear and unambiguous, and that mother had violated the plan. *Id.* at 194. Relevant to this case, the majority rejected mother's contention that her alleged violations of the plan were not willful because she did not understand that the plan modified the standard rights allotted parents by statute. *Id.*

On this point, the dissent disagreed. Rather, Judge Holly Kirby opined that Mother's lack of awareness of the modified parenting plan's requirements undermined any willfulness required to sustain a conviction for criminal contempt:

> If the alleged contemnor in fact did not have knowledge of the terms of the order that was violated, I believe that this precludes a finding that her violation of the order was willful. In this case, the trial court's holding was premised on its conclusion that [mother] believed, after consulting with her attorney at the time, that the order did not require her to notify [father] of the trip. In light of this, I believe that the intent element has not been satisfied, and I would reverse the finding of criminal contempt on that basis.

*Id.* at 197 (J. Kirby, dissenting).[4] Moreover, Judge Kirby rejected the notion "that constructive knowledge of the terms of the trial court's order may be sufficient to support a finding of criminal contempt." *Id.* at 196. Although Judge Kirby noted that previous cases had rejected as a defense to contempt that a contemnor was acting on the advice of counsel, Judge Kirby dismissed these cases as outdated and improperly grouping together both civil and criminal contempt. *Id.* at 196–97 (citing *Garrett v. Forest Lawn Memorial Gardens, Inc.*, 588 S.W.2d 309, 315 (Tenn. Ct. App. 1979) (citing *Robinson v. Air Draulics Engineering Co.*, 214 Tenn. 30, 377 S.W.2d 908 (Tenn. 1964)).[5] Rather, Judge Kirby opined that the willfulness element of criminal contempt must be shown by proof that the violation of the court's order "'was committed intentionally, with knowledge that the act was in violation of the court order, as distinguished from an accidental,

---

[4] In 2014, Justice Kirby was elevated to the Tennessee Supreme Court.

[5] We note that nothing in either *Garrett* or *Robinson* indicate that the alleged contemnor was not aware of the allegedly violated order. *See generally Robinson*, 214 Tenn. 30, 377 S.W.2d at 910–11 (involving willful misbehavior, rather than violation of a lawful order); *Garrett*, 588 S.W.2d at 315 (involving violation of a contract with no discussion of whether the contemnor was not aware of the terms of the contract). Rather, the only question was whether an act was willful when a contemnor violated a known duty on the advice of counsel. The issue here is not that Husband was aware of the statutory injunction, but chose to violate it based on counsel's advice, but that he was completely unaware of the injunction's prohibition because the injunction had not been discussed with him by Initial Attorney. As such, these cases do not resolve the issue presented in this case.

- 15 -

inadvertent or negligent violation of an order.'" *Id.* at 197 (quoting 17 C.J.S. *Contempt* § 14); *cf. In re Sydney*, 2010 WL 1254349, at \*6 (adopting this definition of willfulness); *see also Smith*, 2010 WL 5276902, at \*6 (citing *In re Sydney's* definition of willfulness favorably).

The implications of *O'Rourke* on this case are murky at best. Importantly, the Court of Appeals concluded that mother's argument that she did not have notice of the relevant parenting plan provision was not supported by the evidence, where electronic communications between father and mother demonstrated that mother was aware of her duty to provide an itinerary to father prior to her violation. Thus, "[e]ven if lack of knowledge of an unambiguous and clear order might be considered to excuse non-compliance with that order, the communications contained in the record clearly demonstrate that [mother] was aware that the trial court's order required her to provide [father] with a travel itinerary and contact information if she took the children out of the Nashville area overnight. The order is unambiguous, and [mother] was aware of its provisions in September 2007." *Id.* at 194–95. Thus, the majority opinion cannot be read to conclude that either no notice or even constructive notice was sufficient to sustain the criminal contempt conviction; rather, the majority clearly held that mother had actual notice of the terms of the modified parenting plan prior to the alleged violations. As such, it does not resolve the dispute in this case.

There is also no clear majority in the states that have likewise considered this issue. Some courts have indicated generally that constructive knowledge is sufficient to sustain a contempt violation. *See, e.g, Bangaly Estate of Sissoko v. Baggiani*, 81 N.E.3d 558, 572 (Ill. App. Ct. 2017) (imputing the knowledge of counsel to the client in a criminal contempt proceeding); *Kaeding v. Collins*, 668 N.E.2d 572, 577 (Ill. App. Ct. 1996) ("Criminal contempt requires that the offender have actual or constructive knowledge of what conduct is forbidden; intent or, at least, knowledge of the nature of the act is necessary."); *Coloma Charter Twp. v. Berrien Cty.*, 894 N.W.2d 623, 632–33 (Mich. Ct. App. 2016) (holding that reasonable doubt was present when there was no evidence that any county employee had actual notice of the order violated *and* there was no proof of service on any person from which knowledge could be imputed); *Kearney Credit v. Davis*, No. 170884, 1996 WL 33359090, at \*1 (Mich. Ct. App. Sept. 13, 1996) ("Defendant contends that there was no proof that he had actual knowledge of the protective order he was charged with violating. There was evidence that defendant's attorney was present at the underlying hearing and approved the protective order, and an attorney's knowledge is generally imputed to his client."). Other courts and judges, however, have indicated that constructive knowledge may be insufficient to sustain a criminal contempt conviction. *See, e.g., Int'l Jai-Alai Players Ass'n v. Sports Palace, Inc.*, 564 So. 2d 281, 283 (Fla. Dist. Ct. App. 1990) ("We reject this argument, finding IJAPA's constructive knowledge of a public record an insufficient basis to sustain a criminal contempt order."); *Kunzler v. O'Dell*, 855 P.2d 270, 277 (Utah Ct. App. 1993) (Bench, J., dissenting in part) ("Imputed knowledge is an insufficient mens rea for

criminal contempt.").

At least one jurisdiction has held that to apply this rule as a conclusive presumption in the criminal contempt context would run afoul of the presumption of innocence:

> The general rule of agency, that notice to or knowledge possessed by an agent is imputable to the principal, applies for certain purposes in the relation of attorney and client. The rule rests on the premise that the agent has acquired knowledge which it was his duty to communicate to his principal, and the presumption is that he has performed that duty. While under our law the presumption is deemed conclusive for the purposes of civil actions, we do not believe that it should be given that effect for the purpose of a proceeding of a criminal nature, such as a contempt proceeding. On the other hand, there appears to be no valid objection to treating the presumption as a disputable presumption for the purpose of a contempt proceeding.

***Freeman v. Superior Court, San Diego Cty.***, 282 P.2d 857, 860 (Cal. 1955) (citations omitted).

The California Court of Appeals recently reaffirmed its high court's holding, ruling that while a court can employ a permissive inference that an attorney's notice was imputed to a client, it is error for the court to apply such a rule as a mandatory presumption. *See **In re Ivey***, 102 Cal. Rptr. 2d 447, 456 (Cal. Ct. App. 2000) (noting that such a presumption is unconstitutional "even if it is disputable or rebuttable"). In support, the California court noted that conclusive presumptions have been held unconstitutional in the criminal context by the United States Supreme Court. ***Id.*** (citing ***Hicks on Behalf of Feiock v. Feiock***, 485 U.S. 624, 637–38, 108 S. Ct. 1423, 99 L. Ed. 2d 721 (1988) (holding a mandatory presumption of ability to pay is unconstitutional in a quasi-criminal matter such as criminal contempt)). Because the record showed that the trial court applied only a permissive inference and evidence was presented from which it could be inferred that father's attorney informed him of the subject orders, the California Court of Appeals affirmed the trial court's finding that the father had willfully violated the orders at issue. ***Id.*** ("From this behavior, one can reasonably infer that father had knowledge of the orders at or near the time the orders were made and deliberately chose to ignore the orders until he was faced with criminal contempt proceedings."). Other jurisdictions appear to likewise consider the context of the notice, rather than applying a conclusive presumption that knowledge was imputed through service on a third-party. *See, e.g.,* ***United States v. Phillips***, 527 F. Supp. 1361, 1365 (N.D. Ill. 1981) ("In sum, the Court may reasonably conclude that the defendants either personally saw the Court's order or were sufficiently aware of the purport of the order so that actual knowledge or notice of the terms of the order directing them to return to work immediately may be

imputed to them.").

Tennessee courts define presumptions in a similar manner to that employed in California. For example, as early as 1958, the Tennessee Supreme Court recognized "the general trend of authority" that "'[a] presumption of law is an inference which, in the absence of direct evidence on the subject, the law requires to be drawn from the existence of certain established facts.'" **Marie v. State**, 319 S.W.2d 86, 89 (Tenn. 1958) (quoting 31 C.J.S. *Evidence* § 117, p. 731). "'A presumption is a substitute for evidence[.]'" **Id.** (quoting **Siler v. Siler**, 277 S.W. 886, 887 (Tenn. 1925)). In particular, "'[a] presumption of fact is that mental process by which the existence of one fact is inferred from proof of some other fact or facts with which experience shows it is usually associated by succession of coexistence.'" **Deavers v. Deavers**, 457 S.W.2d 618, 623 (1970) (quoting **Cox v. Nance**, 143 S.W.2d 897 (Tenn. Ct. App. 1940)). Clearly, a finding that Husband had notice of the statutory injunction by virtue of proof that his attorney was served meets the definition of a presumption or inference of fact. Cf. *Garner's Dictionary of Legal Usage* 704 (3d ed. 2011) (defining "presumption" as a legal inference or assumption that a fact exists, based on the known or proven existence of some other fact or facts). Importantly, this court has previously characterized this rule as an inference of fact. *See* **Winstead v. First Tennessee Bank N.A., Memphis**, 709 S.W.2d 627, 632–33 (Tenn. Ct. App. 1986) (quoting *Thompson on Real Property,* Vol. 8, § 4328 (1963) ("The law, following the inference of fact, conclusively presumes the agent to have performed this duty of informing his principal, and the latter is therefore affected with knowledge of all the material facts of acting in the course of his employment and within the scope of his authority."); *see also* **Boote**, 198 S.W.3d at 742 (characterizing the imputation as "conclusive[]" and stating that it "cannot be rebutted"). Indeed, at oral argument, even Wife characterized the trial court's finding of notice in this case on the rule that a client is "presumed to know and be bound" by the information communicated to his or her counsel "as a matter of law."

Presumptions and inferences are, of course, common place in our jurisprudence. *See generally* **County Court of Ulster County v. Allen**, 442 U.S. 140, 156, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979) ("Inferences and presumptions are a staple of our adversary system of factfinding. It is often necessary for the trier of fact to determine the existence of an element of the crime—that is, an 'ultimate' or 'elemental' fact—from the existence of one or more 'evidentiary' or 'basic' facts."). They are usually divided into two distinct categories, "the entirely permissive inference or presumption" and the "mandatory presumption." **Id.** at 157. A permissive inference "allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant." **Id.** In contrast, a mandatory presumption "tells the trier that he or they *must* find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts." **Id.** This Court often applies a conclusive presumption in termination of parental rights cases with regard to a parent's knowledge of his or her

duty to support. *See, e.g.*, **In re Braxton M.**, 531 S.W.3d 708, 724 (Tenn. Ct. App. 2017) ("[I]t is well settled in Tennessee that every parent is presumed to have knowledge of a parent's duty to support his or her minor children regardless of whether a court order to that effect is in place.") (citing Tenn. Code Ann. § 36-1-106(1)(H) ("Every parent who is eighteen (18) years of age or older is presumed to have knowledge of a parent's legal obligation to support such parent's child or children[.]")).

The use of presumptions in criminal actions, however, is circumscribed by the defendant's constitutional rights. In particular, the United States Supreme Court has held that mandatory, conclusive presumptions conflict with the presumption of innocence in criminal cases "'which the law endows the accused and which extends to every element of the crime.'" **Sandstrom v. Montana** , 442 U.S. 510, 522, 99 S. Ct. 2450, 2458, 61 L. Ed. 2d 39 (1979), *holding modified on other grounds by* **Boyde v. California**, 494 U.S. 370, 110 S. Ct. 1190, 108 L. Ed. 2d 316 (1990) (quoting **Morissette v. United States**, 342 U.S. 246, 275, 72 S.Ct. 240, 96 L.Ed. 288 (1952)); *see also* **Carella v. California**, 491 U.S. 263, 268, 109 S. Ct. 2419, 2422, 105 L. Ed. 2d 218 (1989) (Scalia, J., concurring) ("The Court has disapproved the use of mandatory conclusive presumptions not merely because it conflicts with the overriding presumption of innocence with which the law endows the accused, but also because it invades the fact-finding function which in a criminal case the law assigns solely to the jury[.]" (internal citations and alterations omitted)) (quoting **Sandstrom**, 442 U.S. at 523); **United States v. U.S. Gypsum Co.**, 438 U.S. 422, 435, 98 S. Ct. 2864, 2872, 57 L. Ed. 2d 854 (1978)  ("[A] defendant's state of mind or intent is an element of a criminal antitrust offense which must be established by evidence and inferences drawn therefrom and cannot be taken from the trier of fact through reliance on a legal presumption[.]"); *cf.* **Marie v. State**, 204 Tenn. 197, 204, 319 S.W.2d 86, 89 (Tenn. 1958) (quoting *Underhill's Criminal Evidence*, 5th ed., § 43, p. 66) ("'So, though the decisions are not harmonious, the better and more reasonable view is that the law will not countenance any presumption, which by overcoming the presumption of innocence will cast the burden of proving his innocence upon the defendant.'"). As such, in a criminal action, "in order to pass constitutional muster," only permissive inferences are permitted. **Lowe v. State**, 805 S.W.2d 368, 372 (Tenn. 1991) ("We conclude, however, in order to pass constitutional muster, however, an instruction given to the jury pursuant to the statute would have to be phrased in terms of a permissive inference. The jury instruction given at the petitioner's trial in this case was not so phrased, and it follows that it violated federal due process requirements.").

Even contempt proceedings that are characterized as criminal are not truly criminal actions. Rather, criminal contempt is "quasi criminal in character." **State v. Daugherty**, 191 S.W. 974, 974 (Tenn. 1917); *see also* **Baker v. State**, 417 S.W.3d 428, 439 n.11 (Tenn. 2013) (describing criminal contempt as "quasi-criminal"). As such, Tennessee courts have held that litigants charged with criminal contempt under Tennessee Code Annotated section 29-9-102 are not entitled to the full panoply of rights afforded to criminal defendants. *See* **Baker**, 417 S.W.3d at 439 (holding that those

convicted of criminal contempt are not entitled to seek post-conviction relief, but must utilize the rules for seeking relief from judgment under the Tennessee Rules of Civil Procedure); *Ahern v. Ahern*, 15 S.W.3d 73, 82 (Tenn. 2000) (concluding that "one charged with criminal contempt under Tenn. Code Ann. § 29-9-102 is not entitled to a jury trial"); *State, ex rel. Creighton v. Creighton*, No. M2010-01171-COA-R3-CV, 2011 WL 1344638, at *5 (Tenn. Ct. App. Apr. 7, 2011) (holding that those charged with criminal contempt are not entitled to a state-funded court reporter); *State v. Wood*, 91 S.W.3d 769, 773 (Tenn. Ct. App. 2002) (holding that criminal contempt need not be initiated by indictment or presentment).[6] What is identical in both a criminal contempt action and a criminal prosecution is the defendant's presumption of innocence and the reasonable doubt standard of proof. *See Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996) ("In the trial of a criminal contempt case, therefore, guilt of the accused must be established by proof beyond a reasonable doubt."); *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993) ("Persons charged with criminal contempt are presumed innocent, and the [prosecuting party] must prove them guilty beyond a reasonable doubt."). Thus, one of the foundations for the United States Supreme Court's prohibition on mandatory, conclusive presumptions in the criminal context is present in a criminal contempt prosecution in this State. *See Sandstrom*, 442 U.S. at 523; *see also Carella*, 491 U.S. at 268 (noting that both the right to a jury trial and the presumption of innocence require a prohibition on mandatory conclusive presumptions in criminal cases); *cf. Marie*, 319 S.W.2d at 89 (suggesting that mandatory presumptions conflict with the presumption of innocence). For this reason, we must likewise conclude that a mandatory, conclusive presumption of fact as to notice is prohibited in this context.

As detailed above, the trial court's finding that Husband was aware of the provisions of the statutory injunction appear to rest entirely on the imputation of notice from Initial Attorney to Husband. Nothing in the trial court's order indicates that the trial court considered other evidence presented by Wife from which notice could be inferred,[7] or Husband's evidence that he was never actually provided any notice of the statutory injunction and that he believed that his actions were appropriate because he had taken similar actions during the marriage. As such, we are unable to determine whether the trial court applied a mandatory, conclusive presumption as to notice or merely a permissible inference. If the trial court applied a mandatory, conclusive presumption in finding that Husband had notice of the statutory injunction and therefore that his violation of the

---

[6] Tennessee courts have held that certain additional protections are required when the defendant is charged with contempt under Tennessee Code Annotated section 36-5-104, related to non-payment of child support. *See Brown v. Latham,* 914 S.W.2d 887 (Tenn.1996) (holding that a defendant charged under 36-5-104 is entitled to a jury trial); *State v. Hill*, No. M2011-02233-CCA-R3-CD, 2012 WL 3834066 (Tenn. Crim. App. Sept. 5, 2012) (no perm. app. filed) (holding that because section 36-5-104 is a "general criminal statute," defendants are entitled to grand jury indictments).

[7] For instance, Wife points to motions filed by Father that cite the statutory injunction. The record does contain at least one motion filed by Father prior to the removal of the funds from the college savings accounts that does mention the statutory injunction and suggests that Wife's actions may have violated it.

injunction was willful, the trial court's decision would be in error. If, however, the trial court merely applied a permissive inference on this issue, the trial court's finding that Husband willfully violated the statutory injunction can be sustained. *See Lowe*, 805 S.W.2d at 372 (allowing only permissive inferences in criminal actions). Given the novel nature of this case and the heavy interests involved, we believe the best course of action is to vacate the trial court's judgment and remand to allow the trial court to reweigh the evidence as to Husband's willfulness in light of this Opinion. *See Konvalinka*, 249 S.W.3d at 357 ("Determining whether the violation of a court order was willful is a factual issue that is uniquely within the province of the finder-of-fact who will be able to view the witnesses and assess their credibility."); *see also Coleman v. Olson*, 551 S.W.3d 686, 697 (Tenn. 2018) (vacating the judgment of the trial court and remanding for reconsideration after "adopting a new approach" to deciding the question at issue); *cf. Burris v. Burris*, 512 S.W.3d 239, 257–58 (Tenn. Ct. App. 2016) (vacating the court's judgment sentencing a party for criminal contempt and remanding for "written findings of fact and conclusions of law to support its ruling finding [m]other guilty of thirty-seven counts of criminal contempt"); *Williams v. Singler*, No. W2012-01253-COA-R3-JV, 2013 WL 3927934, at *18 (Tenn. Ct. App. July 31, 2013) (vacating the finding of contempt and remanding for "factual findings as to specific instances of contempt during the relevant time period, including factual findings to support a holding of willfulness"). In its discretion, the trial court may consider new evidence as to this issue. Any new order issued by the trial court shall fully comply with Rule 52.01 of the Tennessee Rules of Civil Procedure. All other issues are pretermitted.

## V.    CONCLUSION

The judgment of the Davidson County Circuit Court is vacated, and this case is remanded for further proceedings consistent with this Opinion. Costs of this appeal are taxed one-half to Appellant Gregg Thomas Tarquinio, and one-half to Appellee Louise Ann Mawn, for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE